[Dkt. No. 15]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WYNDHAM CONSTRUCTION, LLC, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> COLUMBIA CASUALTY INSURANCE CO., <br><br> Defendant/Counter-Claimant. | Civil No. 15-7667 (RMB/KMW) <br><br> **OPINION** |

APPEARANCES:

**Joseph P. Grimes**
Joseph P. Grimes, Esq., LLC
P.O. Box 1090
628 Pardee Lane
Haddonfield, NJ 08033
   *Attorney for Plaintiff/*
   *Counterclaim-Defendant*

**Elyse Schier**
**Gerald T. Ford**
Landman, Corsi, Ballaine & Ford, PC
One Gateway Center
Suite 500
Newark, NJ 07102-5311
   *Attorneys for Defendant/*
   *Counterclaim-Plaintiff*

**BUMB**, United States District Judge:

   THIS MATTER comes before the Court upon the filing of a motion for judgment on the pleadings by Defendant/Counter-Claimant Columbia Casualty Insurance (the "Defendant"). Plaintiff/Counter-Defendant Wyndham Construction, LLC (the

"Plaintiff"), brings causes of action for declaratory judgment and breach of contract stemming from an insurance dispute between Plaintiff, the insured party, and Defendant, the insurer. Defendant has counterclaimed with five causes of action seeking declaratory judgment.

I.   **BACKGROUND**

Plaintiff is a limited liability company, working in the business of providing design, construction and installation services for roadways and associated construction. Compl. ¶ 1 [Dkt. No. 1-1]. On February 4, 2011, Plaintiff was hired to provide work for a general contractor as part of a road widening contract for the New Jersey Turnpike Authority ("NJTA"). Id. ¶ 3. While Plaintiff was working for that general contractor, the NJTA cited a phase of the construction project Plaintiff was responsible for as being out of engineering tolerance because of settlement and shifting of a mechanically stabilized earth ("MSE") wall system. Id. ¶ 5. Plaintiff's sub-contractor reviewed the deficient wall system, and it found that the alleged deficiency was structurally sound and that the wall system should be accepted. Id. ¶ 6. As a result, the NJTA authorized the project to continue over the next six months. Id. ¶ 7. During this time period, the subsequent phases of the construction process entailed building upon the MSE wall system, which was used as a supporting structure. Id.

2

On April 30, 2014, when the project was near completion, the NJTA rejected the out-of-tolerance wall system and formally demanded that the defect be cured. Id. ¶ 8. If the defect was not cured, NJTA informed plaintiff that it would impose delay damages of $10,000 per day, commencing May 1, 2014, the deadline for the completion of work.[1] Id. Plaintiff undertook to cure the defect, and the remedial phase for the wall system took three weeks. Id. ¶ 10. The additional cost of the remedial work to Plaintiff was $253,591. Id. ¶ 11.

Plaintiff alleges that at all times relevant to this matter, it was insured under a Contractors Errors & Omissions Liability policy issued by Defendant, a duly authorized insurance carrier in the State of New Jersey. Id. ¶ 2, 4. Plaintiff alleges that the contract "provided coverage to [Plaintiff] for any 'wrongful acts while you are acting in the business capacity described in the Declarations' for any liability resulting in damages from 'your installed product' as well as 'liability in the performance of design services.'" Id. ¶ 13. Consistent with this policy, Plaintiff alleges that on February 10, 2015, it made a timely demand for reimbursement for the expenses incurred as a result of curing the defective MSE wall system. Id. ¶ 14. Plaintiff alleges that Defendant denied

---

[1] Ultimately, due to other circumstances, the delay damages did not begin running until May 17, 2014. Ans. Ex. 1 at 10.

3

payment based upon Plaintiff's alleged failure to give prior notice to it of NJTA's demand for remediation.  Id. ¶ 15.  The letter Defendant sent to Plaintiff denying coverage, however, indicated that it reserved "all of its rights, remedies and defenses under the Policy and the applicable law, including, but not limited to, the right to raise other coverage issues or Policy provisions as developments warrant."  Counterclaim Ans. Ex. 2 at 2.

The errors and omissions liability policy provides the following with regard to notice:

> B. Your duties in the event of a claim:
>
> If there is a claim, you must do the following:
>
> 1. Promptly notify us in writing.  This notice must be given to us within the policy period in which the claim is made or within 60 days after its expiration or termination; . . .
>
> 3. Immediately forward to us all documents that you received in connection with the claim; . . .
>
> 5. Refuse, except solely at your own cost, to voluntarily make any payment admit liability, assume any obligation or incur any expense without our prior written approval[.]

Compl. ¶ 15.  Plaintiff alleges that it gave notice within the policy period or within 60 days of the expiration or termination of it, as well as forwarded all appropriate documents.  Id. ¶¶ 16, 17.  Plaintiff alleges that its decision to go forward at its own cost with regard to remediating the structural defects

4

of the MSE wall system was to comply with its duty to mitigate damages and to avoid unnecessary delay damages to the NJTA. Id. ¶ 18.

Plaintiff filed the instant action on September 3, 2015 in the Superior Court of the State of New Jersey, Gloucester County. Notice of Removal ¶ 1 [Dkt. No. 1]. It was removed to this Court by Defendant on October 22, 2015. Id. Plaintiff brings two causes of action, the first seeking various declaratory judgment relief concerning its compliance with the contract and the ambiguousness of certain terms of the contract, and the second alleging a breach of contract for Defendant's refusal to make payments to Plaintiff in the amount of $253,591, which Plaintiff contends are owed under the contract of insurance. Defendant answered the Complaint and asserted five counterclaims for declaratory relief. Defendant seeks declarations that the amounts Plaintiff expended to cure the defective wall were not "legally obligated" or "damages" pursuant to the insurance policy. Defendant additionally seeks declarations that Plaintiff failed to comply with three conditions-precedent to coverage.

## II.  LEGAL STANDARD

The standard for review of a plaintiff's complaint under Rule 12(c) is identical to that under Federal Rule of Civil Procedure 12(b)(6). See Fed. R. Civ. P. 12(h)(2); see also

5

Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). "Dismissal of a complaint pursuant to Rule 12(b)(6) is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Hackensack Riverkeeper, Inc. v. Del. Ostego Corp., 450 F.Supp.2d 467, 484 (D.N.J. 2006) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). The allegations contained in the complaint are to be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). A plaintiff will also be "given the benefit of every favorable inference that can be drawn from those allegations." Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991). However, the plaintiff must make factual allegations and cannot rely on "conclusory recitations of law." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 179 (3d Cir. 1988).

Under New Jersey law, "determination of the proper coverage of an insurance contract is a question of law." Cnty. of Gloucester v. Princeton Ins. Co., 317 Fed. Appx. 156, 159 (3d Cir. 2008). "[T]he first step in examining an insurance contract is to determine whether an ambiguity exists." Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 520 (3d Cir. 1997). An ambiguity exists when "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc.,

6

81 N.J. 233, 247 (1979). In determining whether an ambiguity exists, it is also important to remember that insurance contracts are generally viewed as contracts of adhesion, and accordingly, ambiguities in their language are interpreted against the drafter. Cnty. of Gloucester, 317 F.3d at 161. However, "[w]hen the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not make a better contract for either of the parties . . . . Absent statutory [prohibitions], an insurance company has the right to impose whatever conditions it desires prior to assuming its obligations and such provisions should be construed in accordance with the language used." Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960) (internal citation omitted).

### III. **ANALYSIS**

Defendant makes several arguments and seeks declaratory judgment with regard to whether it is obligated to make payment under the insurance contract. First, Defendant argues that the policy did not cover amounts that Plaintiff was not "legally obligated" to pay as damages. Second, but somewhat relatedly, Defendant argues that the amounts that Plaintiff paid of its own volition are not "damages" as the insurance policy defines that term. Third, Defendant contends that Plaintiff did not comply with three separate conditions-precedent to coverage, including the voluntary payments provision, the participation in defense

provision, and the prompt notice provision. Because the Court finds that the "legally obligated" language and "damages" language contained in the statement of coverage warrant judgment on the pleadings in favor of Defendant, the Court does not address the issue of conditions-precedent to coverage.[2]

### A. "Legally Obligated"

Defendant argues that judgment on the pleadings in its favor is proper where Plaintiff's claim of $253,591 does not amount to money that Plaintiff was "legally obligated to pay." Def.'s Br. 7-9. The "Coverages" section of the insurance policy states at its outset: "We will pay all amounts in excess of the self-insured retention and up to our limit of liability **that you become legally obligated to pay** as damages as a result of a claim alleging wrongful acts . . . ." Ans. [Dkt. No. 4] Ex. 2 (emphasis added). It is Defendant's contention that because Plaintiff voluntarily agreed to pay the costs associated with

---

[2] The Court considers a resolution of the issue of conditions-precedent to coverage to involve fact issues that would require discovery to resolve. These issues would also appear moot given the Court's holding. In light of the fact that Plaintiff's cause of action for breach of contract is resolved in favor of Defendant in addition to one of Plaintiff's requests for declaratory judgment, the parties shall inform this Court within ten (10) days whether they intend to pursue declaratory judgment with regard to the conditions-precedent, and why such an action would not be moot at this stage. In the event the parties agree that the Court's ruling resolves the issue of coverage, the parties shall additionally provide to the Court within ten (10) days of the entry of this Opinion a joint proposed order that is consistent with this Opinion's reasoning.

remediating the wall's defects, and was not ordered to make those payments by any court, it was not legally obligated to pay those amounts. Def.'s Br. at 7-9. As such, it contends that its denial of coverage was proper.

In making that argument, Defendant relies **extensively** on Permasteelisa v. Columbia Cas. Co., 377 F. App'x 260 (3d Cir. 2010), insisting it is the controlling decision on contract provisions involving "legally obligated to pay" language as it relates to New Jersey insurance law. Indeed, in addition to being cited in other sections of Defendant's brief, the discussion of Permasteelisa dominates the three-page discussion of Defendant's argument that Plaintiff's remediation expenses do not constitute damages Plaintiff was "legally obligated to pay." Def.'s Br. at 7-9. Despite this Third Circuit precedent amounting to some of the only authority on the issue of insurance contracts containing "legally obligated to pay" language, Plaintiff ignores it. Indeed, Plaintiff presents no counterargument to Defendant's position. Thus, in this Court's view, Plaintiff's silence is telling and is read as a waiver by this Court on the issue of Permasteelisa's applicability. See Newton-Haskoor v. Coface N. Am., 2012 WL 181302 (D.N.J. May 17, 2012) ("Plaintiff has failed to respond to Defendants['] arguments that she has failed to plead plausible claims for [several causes of action.] As such, Plaintiff has abandoned

9

those claims."); Duran v. Equifirst, 2010 WL 936199, at *3 Mar. 12, 2010) ("The absence of argument constitutes a waiver in regard to the issue left unaddressed, and that waives the individual counts themselves."); Marjac, LLC v. Trenk, 2006 WL 3751395 (D.N.J. Dec. 19, 2006) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

Regardless of whether Plaintiff's silence constitutes a waiver (and the Court believes it does), Permasteelisa is significantly on point with regard to the interpretation of damages a party is "legally obligated to pay." See id. at 261 ("This diversity action requires us to decide, under New Jersey law, the meaning of an insurance policy term that covers the insured against amounts it becomes 'legally obligated to pay.'"). The case concerned a plaintiff who was hired to construct a curtain wall for a forty-two story office tower. Id. at 261. After defects in the work became apparent several years into the installation, the company contracting for the building demanded that the plaintiff repair the curtain wall at its own cost. Id. The plaintiff did so, expending roughly $5.5 million. Id. at 262. At summary judgment, the District Court determined that "the dispositive issue was the interpretation under New Jersey law of the [] policy phrase '[w]e will pay all amounts . . . which you become legally obligation to pay.'" Id.

10

at 263.  The District Court ruled that the contract term "legally obligated to pay" required "the presentation of proofs in a court of competent jurisdiction and a finding by the court or jury of liability."  Id. at 263.  On appeal, the Third Circuit affirmed the District Court.  Relying upon the same state court opinion as the District Court, Bacon v. American Insurance Co., 131 N.J. Super. 450 (N.J. Super Ct. Law Div. 1974), the Third Circuit predicted that the highest court of New Jersey would require a final judgment in order for an amount payed by an insured to amount to "legally obligated" payments. Id. at 267.

   Because this Court finds that Plaintiff's allegations expressly allege payments that were not made under a legal obligation, the Court finds Permasteelisa to be authoritative on the topic.  Specifically, Plaintiff's allegations expressly concede that it elected to go forward at its own expense in remediating the accused flaws in the project.  Compl. ¶ 20. Plaintiff has not alleged that any final legal judgment was entered against it for this amount.  Indeed, such an allegation would be entirely counter to Plaintiff's theory of the case, in which Plaintiff engaged in an expedited remediation of the alleged MSE wall defects as a part of its duty to mitigate damages.  Compl. ¶ 18.

In light of the fact that Plaintiff has not made any attempt to argue that the damages were legally obligated or that Permasteelisa is inapplicable, this Court does not have the benefit of understanding how Plaintiff believes it is entitled to coverage. Nevertheless, as noted above, in the Complaint, Plaintiff contends that one reason it did go forward at its own cost was "to comply with its legal obligation to mitigate damages." Id. Even if this had been argued in the brief, this would be insufficient. While certainly contractual obligations and duties that flow from contracts are in a sense "legally obligated," such obligations were advanced by the plaintiff in Permasteelisa, but explicitly rejected by the court. Id. at 266 ("Absent mandatory or even persuasive authority to the contrary, we conclude that the New Jersey Supreme Court would reject Permasteelisa's argument that its contract to provide a curtain wall constituted 'a legal obligation to pay' within the meaning of the CAN Policy.'"). Permasteelisa explicitly adopts the reasoning of Bacon, which is clear: an insured is not legally obligated to pay damages until that responsibility has become "legally fixed and established." Bacon, 131 N.J. Super. at 457. No such circumstances are present here, where Plaintiff's immediate remediation foreclosed the need for any such legal determination as to whether Plaintiff was indeed liable for an error or omission to the NJTA.

This policy did not cover Plaintiff's claim, and there can be no breach of contract for the failure to pay that claim. As such, Defendant's motion for judgment on the pleadings should be granted with regard to Plaintiff's request for a declaratory judgment that Plaintiff is entitled to coverage under the insurance policy. Likewise, Defendant's motion for judgment on the pleadings as to Plaintiff's breach of contract action should be granted. Finally, Defendant's cause of action seeking a declaratory judgment that the amounts sought by Plaintiff are not amounts that Plaintiff was legally obligated to pay should be granted.

### B. "Damages"

Alternatively, even if this Court were to find that Plaintiff was legally obligated to pay the amount they claim to NJTA, these would not constitute "damages" as that term is defined in the insurance policy. Specifically, Defendant argues, and this Court agrees, that amounts that Plaintiff *voluntarily* agreed to pay, such as the voluntary remediation, do not count as "damages" as that term is defined by the insurance policy.

In arguing that the amounts it expended were "damages" in its brief, Plaintiff summarily quotes the policy, although in a tellingly limited way. As Plaintiff sets forth in its brief, "Damages cover any judgment, award or settlement. Clearly the

13

remedial work in the present case is a 'settlement.'" The full definition of damages from the policy states, "**Damages** mean judgments, awards and settlements **you are** legally obligated to pay because of a covered claim. All settlements must be made with our written consent. . . . **Damages** do not include: fees, costs and expenses incurred or charged by any of **you**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of the foregoing[.]" Answer Ex. 2 at 2. Plaintiff does not discuss this relevant additional language at all.

Under a reading of the policy, Plaintiff's self-described "settlement" of these claims against it are not "damages" because it does not allege it entered into a settlement with written consent. Indeed, the upshot of all of Plaintiff's arguments in its brief is that it did not contact Defendant until after it completed the remediation work, which Plaintiff terms a "settlement." Pl.'s Br. 4 ("Insured then submitted its claim for damages [to Defendant] after the remediation work was performed which was denied based upon lack of prior notice before 'settlement' of the claim.").[3] It is unclear to this Court how the amount is coverable under the policy, given

---

[3] This admission comes as a part of Plaintiff's argument that it did not fail to comply with the prior notice condition-precedent to coverage, not to the specific exclusion of settlements without authorization from the policy definitions.

14

Plaintiff's admission that this amount was a settlement "without written consent" by Defendant – contrary to the policy language. The Court must give effect to the plain language of the contract, if such language is unambiguous.  As such, this Court would find the denial of coverage proper on this ground as well. Defendant's second request for declaratory judgment should therefore be granted.

### C. <u>Denial of Coverage Letter</u>

To the extent that Plaintiff does challenge the fact that the claim at issue amounted to damages it was legally obligated to pay, it argues that Defendant's contentions are foreclosed by the coverage letter "where it acknowledged the claim of damages, never asserted the definition of damages as an exclusion and simply denied coverage based upon lack of notice."  Pl.'s Br. 9. Plaintiff's argument relies on no case law and significantly overstates the denial of coverage letter.  That letter reads, in material part: "The Authority's demand for services from Wyndham as a result of the allegedly improper installation of the walls is sufficient to qualify as a claim alleging wrongful acts within the meaning of the Policy."  Counterclaim Ans. Ex. 2 at 4.  It makes no mention of whether the claim was sufficient for purposes of the "legally obligated" and "damages" language.  It merely references the general umbrella of coverage provided by

the policy for "claim[s] alleging wrongful acts." Ans. Ex. 2 at 5.

Further, as mentioned above, the denial of coverage letter concludes with a reservation of all rights, remedies and defenses under the policy, including "the right to raise other coverage issues or Policy provisions as developments warrant. Neither this letter nor any actions taken by or on behalf of Continental should be deemed to waive any such rights." Id. at 7. The Court finds that this letter in no way amounts to a waiver or estoppel from denying coverage on the above grounds.

Although Plaintiff asserts the argument in a somewhat scatter-shot approach throughout its brief, Plaintiff's argument that the denial of coverage forecloses Defendant's contentions conceivably falls into two camps with regard to insurance contract law: waiver or estoppel. With regard to waiver, it has been frequently held that a theory of waiver cannot be used to expand coverage. See, e.g., Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 15 F. Supp. 2d 561, 566 (D.N.J. 1998); Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 129 (1962).

On the other hand, estoppel is often argued when an insurer acknowledges that a claim is covered and later changes that determination to the detriment of the insured. See, e.g., Federal Ins. Co. v. Cherokee Ardell, L.L.C., 2011 WL 1254036, at *18 (D.N.J. Mar. 28, 2011) ("[A]n insurer's unreasonable delay

16

in asserting its right to deny a claim can estop the insurer from disclaiming coverage, even for a claim that would fall outside the policy."). With regard to estoppel, "an essential element for the application of estoppel is prejudice." Id.; see also Transamerica Occidental Life Ins. Co. v. Total Sys., Inc., 2008 WL 4601764m at *2 (D.N.J. Oct. 15, 2008) ("Among the 'appropriate circumstances' allowing for [the application of estoppel] is where the party can show: (1) a misrepresentation as to the fact or extent of coverage by the insurer or its agent; and (2) reasonable reliance by the insured thereon to his ultimate detriment.") Here, Plaintiff did not receive any conflicting messages regarding coverage that could have resulted in its detrimental reliance. As pled, Plaintiff had already expended the money on remediation at the time it received the denial of benefits letter from the insurer. Even if it were the case that Defendant had initially suggested coverage may be possible for these claims — which it did not — Plaintiff informed Defendant of the claim in February 2015 and received a clear denial of coverage letter in March 2015, which reserved all additional grounds for claim denial. "[C]ourts have been hesitant to find reliance for purposes of estoppel where the insurer explicitly reserved its rights to subsequently disclaim coverage [in the future]." Cherokee Ardell, 2011 WL 1254036, at *18. There are simply no circumstances alleged upon which this

17

Court can make any finding of estoppel. <u>Transamerica Occidental Life Ins. Co.</u>, 2008 WL 4601764, at *3 ("Estoppel should be applied only in 'very compelling circumstances, where the interests of justice, morality, and common fairness clearly dictate that course.'")  As such, the Court does not find that Defendant should be estopped from denying coverage on the grounds it has set forth.

**IV.  <u>CONCLUSION</u>**

For the foregoing reasons, and due to the lack of dispute concerning the applicable insurance policy provisions, the Court GRANTS Defendant's motion for judgment on the pleadings with regard to Plaintiff's claim for breach of contract.  Further, Plaintiff's cause of action for declaratory judgment concerning its entitlement to coverage under the insurance policy is also dismissed, as Plaintiff has not sufficiently alleged that the denial of benefits was improper or a breach of the insurance agreement.  Defendant's motion for judgment on the pleadings with regard to its first and second requests for declaratory judgment is also GRANTED.

The Court does not reach the issue of Plaintiff's requests for declaratory judgment concerning the ambiguity of the conditions-precedent or its satisfaction of the conditions-precedent to coverage, nor does the Court reach Defendant's final three requests for declaratory relief as to those

conditions-precedent.  Nevertheless, those requests for declaratory relief appear to involve factual disputes that would need to be resolved through discovery.  The parties shall inform the Court within ten (10) days if they wish to pursue those claims notwithstanding this Court's ruling, and why such a pursuit would not be moot in light of this Court's ruling.

In the event the parties agree that the remaining declaratory judgment requests on both sides are mooted or the parties do not wish to pursue them, the parties shall additionally file within ten (10) days of the entry of this Opinion a joint proposed order, consistent with this Court's reasoning, disposing of the applicable claims and counterclaims.

DATED: September 21, 2016

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
UNITED STATES DISTRICT JUDGE